**IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

BRANDON BOETTIGER,

Plaintiff,

vs.

JUSTICE RESOURCE INSTITUTE an MA corporation formerly responsible for the operation of CRESSON SECURE TREATMENT UNIT,

Defendant.

No.: 24-cv-1470 - MRH

PLAINTIFF'S SECOND AMENDED COMPLAINT

Filed on Behalf of Plaintiff

Counsel of Record for this Party:

JASON E. LUCKASEVIC, ESQUIRE
Pa I.D. No.: 85557

GOLDBREG, PERSKY & WHITE, P.C.
11 Stanwix St., Suite 1800
Pittsburgh, PA 15222
Phone: (412) 471-3980

**jluckasevic@gpwlaw.com**

MAX PETRUNYA, ESQUIRE
Pa. I.D. No.: 309122

MAX PETRUNYA, P.C.
5 Bayard Rd., Unit 917
Pittsburgh, PA 15213
Phone: (412) 720-3497

maxpetrunyapc@gmail.com

**JURY TRIAL DEMANDED**

**IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

BRANDON BOETTIGER,

Plaintiff,

vs.

JUSTICE RESOURCE INSTITUTE an MA corporation formerly responsible for the operation of CRESSON SECURE TREATMENT UNIT,

Defendant.

No.: 24-cv-1470-MRH

**PLAINTIFF'S SECOND AMENDED COMPLAINT**

AND NOW, comes the Plaintiff, by and through his undersigned counsel, and files the following Second Amended Complaint in Civil Action, averring as follows:

**PARTIES**

1. Plaintiff Brandon Boettiger is an adult individual residing within the Commonwealth of Pennsylvania. At the time of the incidents forming the basis of Plaintiff's Complaint, Plaintiff was a minor at the Defendant's facility.

2. Defendant, JUSTICE RESOURCE INSTITUTE (hereinafter "JRI") is a Massachusetts based corporation with its principal office located at 160 Gould St # 300, Needham Heights, MA 02494.

3. Throughout the time of the incidents forming the basis of Plaintiff's Complaint, JRI was responsible for the operation of the juvenile detention treatment center known as Cresson Secure Treatment Unit (hereinafter "Cresson") located at 251 Correction Road, Cresson, Pennsylvania 16630, in Cambria County, Pennsylvania.

4. At all times relevant hereto, Defendant JRI was acting independently, and by and through the actions of its employees who were acting within the course and scope of their employment.

5. At all times relevant hereto, Defendant JRI, through its corporate headquarters, was responsible for the oversight, management, control, hiring, policies and procedures, and operations of Cresson whereby the events alleged herein took place.

6. Throughout the entirety of this complaint, the term Defendant shall refer to both "JRI" and "Cresson" collectively.

7. The Cresson facility was formally closed in approximately August 2015. Prior to its closure, and throughout the pendency of the allegations in Plaintiff's Complaint, Cresson was operated and managed by Defendant JRI.

8. Plaintiff was born after November 26, 1989, and is currently under the age of fifty-five (55). Plaintiff's claims therefore are not barred by any Statute of Limitations within the Commonwealth of Pennsylvania.

9. As set forth more fully below, Plaintiff asserts his state law claim for negligence and breach of fiduciary duty.

10. Plaintiff seeks compensatory and punitive damages for the injuries he suffered, as well as reasonable attorneys' fees and costs and disbursements in bringing this action.

## FACTS

**a.** Defendants' Duty to Plaintiff

11. At all times relevant and material hereto, the Defendant was responsible for providing for the care, protection and safety of children placed in Cresson.

12. This naturally includes oversight and monitoring of the Cresson facility and its employees and supervisors to ensure compliance with applicable city, state, and federal laws.

13. Defendant was responsible for ensuring that the rights of children placed at Cresson were not violated and that children placed in Cresson continued to enjoy all the fundamental rights and freedoms children have outside of juvenile detention centers. This included the basic right to be treated with dignity, the right to be free of cruel and inhumane treatment, and the right to be free from physical and sexual abuse.

14. Upon information and belief, Defendant was responsible for developing policies and procedures to prevent the sexual abuse of children in its legal custody, performing database and/or background checks on prospective employees and staff of Cresson.

15. At all times relevant and material hereto, Pennsylvania authorized Defendant to inspect and supervise Cresson in the interest of protecting the life, health, safety, and comfort of the children placed in juvenile detention, which includes, pursuant to Pennsylvania law, the authorization to investigate all reported child abuse allegations at Cresson.

16. At all times relevant and material hereto, Defendant had a non-delegable duty to use reasonable care in the investigation, licensing, supervision, oversight, and/or monitoring of Cresson, its employees and supervisors, and to develop or implement programs, guidelines, procedures and/or training to prevent the abuse of children placed within Cresson.

17. Given its relationship to the children placed at the Cresson facility, Defendant provided child welfare, child protective care, and childcare services.

18. At all times relevant and material hereto, Defendant was the legal guardian and/or custodian of Plaintiff and owed Plaintiff a duty of reasonable care to protect him from foreseeable harms.

19. At all times relevant and material hereto, Defendant owed a non-delegable duty to Plaintiffs to use reasonable care to protect the safety, care, well-being and health of Plaintiffs while they were under its care and custody. Defendant's duties encompassed reasonable care in the supervision of children in its agents' custody and control, as well as reasonable care in the selection, retention and supervision of individuals working at Cresson.

20. At all times relevant and material hereto, Defendant owed a non-delegable duty to exercise reasonable care in the training of employees and/or agents in the prevention of sexual abuse and protection of the safety of children in its care, custody and/or control.

21. At all times relevant and material hereto, the Defendant owed a non-delegable duty to establish and implement policies and procedures in the exercise of reasonable care for the prevention of sexual abuse and protection of the safety of children in its care, custody and/or control.

22. At all times relevant and material hereto, Defendant owed non-delegable duties to children in juvenile detention, including without limitation:

a. To evaluate and investigate all reports of child abuse and/or neglect;

b. To investigate all relevant conditions of the juvenile detention centers and youth centers and facilities that might affect the child;

c. To ensure that children residing in a juvenile detention center and youth centers and facilities are supervised at all times by authorized adult caregivers;

d. To report and investigate all known incidents of sexual abuse or aggression occurring in the juvenile detention center and youth centers and facilities;

e. To ensure that children were not left in dangerous conditions, including being subjected to sexual, emotional or physical abuse.

23. Defendant is legally responsible for the acts, omissions and negligence of its agents, employees and entities with which it retains and/or contracts with to render juvenile detention and other custodial services, including without limitation, at Cresson.

24. Defendant is legally responsible for the acts, omissions and negligence of the agents, employees and entities carrying out its non-delegable duties, including without limitation, at Cresson.

**b.** Sexual Abuse of Plaintiff at Cresson

25. For decades, counselors, guards, and agents of the Defendant Cresson have subjected children, including the individual Plaintiff and others, to sexual abuse and harassment.

26. The institution, with knowledge of the actions of its employees and/or a willful ignorance to these actions, has turned a blind eye to this culture of abuse.

27. The sexual abuse at these facilities, and as detailed herein, ranges from inappropriate strip searches to rape using physically violent force.

28. The employees of the Defendant's institution have had inappropriate and criminal sexual relationships with children at the facility.

29. These relationships are oftentimes predicated on grooming, bribery, and threats.

30. Children at the Defendant's institution are regularly offered contraband or privileges in exchange for sexual favors.

31. Other children are threatened with punishment, physical harm, and the threat of individuals not believing their recitation of the abuse by the authority figures at the institution.

32. This culture of pervasive and persistent abuse has been reported publicly for decades.

33. Despite its pervasiveness, the culture continues with children at the institution scared to file grievances or claims against their abusers for fear of retaliation or knowing they will not be believed.

34. Knowing that the agencies responsible for overseeing their institution do not have the resources to curtail this behavior, the employees at the institutions abuse the system to commit repeated sexual abuse against these individuals without any repercussions.

**c.** Facts Specific to Plaintiff at Cresson

Plaintiff Brandon Bottiger (B.B.)

35. Plaintiff was housed at the Cresson facility operated by the Justice Resource Institute in approximately 2008 to 2011, when he was approximately 15 to 18 years old.

36. Plaintiff B.B. was born in 1993 thus there is no issue with the Statute of Limitations related to his claims for sexual abuse.

37. Plaintiff B.B. was sexually abused by an individual employee known as Leo ("Abuser Leo" or "Abuser"). At the relevant times herein, Abuser Leo was a supervisor at the Cresson Secure Treatment Unit and served as an employee/agent of the Defendants.

38. Leo is described as ranging in height from 5'11" to 6'3" with short dark hair.

39. Leo is a white male who wore a blue shirt that said supervisor over the breast.

40. The sexual abuse took place on numerous separate occasions while Plaintiff B.B. was housed at Cresson. Abuser Leo would touch B.B.'s genitals over and underneath of his clothing. Abuser Leo would also penetrate B.B.'s anus.

41. The first instance of abuse by Leo against B.B. took place in approximately August 2008 when B.B. was approximately 15 years old, and occurred at the Apple Creek Mental Health portion of the Cresson facility.

42. Abuser Leo would perpetrate the abuse against B.B regularly during the day in various locations at Cresson, including in B.B.'s cell, in the bathroom, and sometimes in classrooms after class hours.

43. As an employee of Cresson, Abuser Leo would have been aware of the locations at the facility which gave him the best likelihood of perpetrating his abuse.

44. Abuser Leo reported directly to a woman named Maria who was an employee at Cresson.

45. As a supervisor of employees at Cresson, Maria would be responsible for investigating any alleged abuse and reporting the abuse to her supervisors at Cresson for investigation.

46. B.B. informed Maria of the abuse perpetrated by Leo against B.B.

47. The complaints and issues raised by B.B. were ignored by Maria and Cresson. The abuse of B.B. continued thereafter.

48. Marie told B.B. that if B.B. continued to make false and outlandish accusations like the ones B.B. told Maria about the abuse perpetrated by Leo, Maria would have B.B. dismissed from the Cresson program.

49. This is a consistent response that most child sexual abuse victims receive from supervisors at facilities like Cresson.

50. The abuse of B.B. occurred from approximately August 2008 until B.B. left Cresson in 2011.

51. The above-described sexual contact and/or acts perpetrated by Abuser Leo were non-consensual. At the relevant times herein, Plaintiff B.B. was a minor and could not legally consent.

52. Defendants knew, or should have known, that Abuser Leo was sexually abusing children at Cresson, including Plaintiff B.B.

53. At the time of the above-described sexual abuse of Plaintiff B.B., Abuser Leo was not being adequately supervised, monitored, or surveilled by Defendants. Upon information and belief, Defendants' failure to supervise, discipline, remove, and/or otherwise investigate Abuser Leo enabled the above-described sexual abuse.

**d.** Facts Common to Plaintiff at Cresson

54. Abuser Leo used his position of authority over Plaintiff, as an agent of Defendant, to calculatedly manipulate and groom Plaintiff during Plaintiff's time as juvenile detainee at Cresson as described above.

55. Abuser Leo sexually, physically, and/or emotionally abused Plaintiff, while he was a minor during the period described above.

56. At all material times hereto, Defendant knew or should have known from information provided by B.B. to Maria that Abuser Leo sexually, physically, and/or emotionally abused children and was not fit to serve as staff member, teacher, employee, agent, servant, representative and/or ostensible agent.

57. Abuser Leo engaged in forcible compulsion or threat of forcible compulsion of Plaintiff during and in order to facilitate each occasion of sexual abuse, as the above-described.

58. At all material times hereto, Defendant took no action and/or or failed to timely and adequately take action to warn or otherwise protect children of Cresson, including Plaintiff, from Abusers like Leo.

59. At all times material hereto, as a result of the sexual, physical, and/or emotional abuse, Plaintiff has suffered from extreme difficultly navigating intimate relationships, and experienced and continues to experience bouts of anger, difficulties when involved in relationships and attempting to be intimate in the context of these relationships.

60. As a result of the sexual, physical, and/or emotional abuse set forth above, Plaintiff suffered great, permanent harm, including but not limited to, the following: severe emotional distress, extreme trauma, depression, anxiety, post-traumatic stress disorder (PTSD) symptoms, suicidal ideations, humiliation, embarrassment, fear, shame, emotional dissociation, and/or loss of self-esteem and self- worth, all of which has and/or will continue to require counseling, therapy, and/or other treatment.

61. Also, as a result of the sexual, physical, and/or emotional abuse set forth above and its consequential trauma and harm, Plaintiff has suffered a severe impairment and disruption of his enjoyment of life, identity, intimacy with loved ones, sexuality, and/or belief structure, including, but not limited to, the impairment and disruption of their relationship with members of their families, friends, acquaintances, and/or others.

62. Also, as a result of the sexual, physical, and/or emotional abuse set forth above and its consequential trauma and harm, the Plaintiff suffered from destructive and dysfunctional behaviors, including, but not limited to, addictions (i.e. alcohol and/or drugs) and/or other mental

health issues, all of which have required and/or will require counseling, therapy, and/or other treatment.

63. Also, as a result of the sexual, physical, and/or emotional abuse set forth above and its consequential trauma and harm, the Plaintiff has incurred significant past loss of wages and future loss of earning capacity to their permanent detriment.

64. Now, in conformity with Pennsylvania law, Plaintiff bring the within action for damages.

65. As alleged in greater detail herein above and/or below, all of Plaintiff's severe, permanent, and ongoing damages were caused by the culpable acts and/or omissions of Defendant.

66. As set forth more fully herein, the negligence, gross negligence, recklessness, and/or punitive behavior of the Defendant was a direct and proximate cause of damages to Plaintiffs.

67. Plaintiff's injuries and/or damages were caused solely by the negligence, gross negligence, recklessness, and/or punitive behavior of the Defendant, as set forth more fully herein, and were not caused or contributed thereto by any negligence, gross negligence, recklessness and/or punitive behavior on the part of the Plaintiffs.

## COUNT 1 – NEGLIGENCE

**Plaintiff**
**v.**
**Defendant JRI operating Cresson**

68. The previous paragraphs set forth above are incorporated herein by reference.

69. Defendant and its staff members had a duty to report child abuse when a reasonable belief exists it occurred, and the Defendant breached this duty and failed to notify the proper authorities about the Plaintiff's abuse as required by 55 Pa.C.S.A. § 3680 *et seq*; 5 Pa.C.S.A. §

3800 *et seq*; and all other applicable child abuse reporting requirement laws related to mandatory abuse reporters and applicable to Defendants' facility.

70. The recklessness, negligence and/or carelessness of Defendant by and through their actual or apparent staff, teachers, counselors, employees, agents, servants, representatives, and/or ostensible agents hired, certified, assigned, retained, supervised, managed, overseen, directed, administrated, and/or otherwise controlled by and for said Defendant, consisted of, among other things, the following:

a. Failing to properly screen Cresson staff, teachers, counselors, employees, agents, servants, representatives, and ostensible agents adequately before placing them in close contact with children;

b. Failure to properly investigate complaints of sexual, physical, and/or emotional abuse, inappropriate behavior and/or other abusive behavior, in general and as pled herein;

c. Minimizing, ignoring, or excusing inappropriate or questionable behavior and/or misconduct by Cresson staff, teachers, counselors, employees, agents, servants, representatives, and ostensible agents over a period of months, years and/or decades;

d. Assigning Cresson staff, teachers, counselors, employees, agents, servants, representatives, and/or ostensible agents known to have engaged in questionable and/or inappropriate behavior or misconduct and/or known to be pedophiles and/or sexual predators and/or physical abusers, including but not limited to, Abuser Leo, and/or staff members, to a position within Cresson where said individual(s) had regular contact with children;

e. Failure to report criminal activity, including child abuse, to appropriate law enforcement agencies and/or authorities, as pled herein;

f. Negligent failure to provide a safe environment and protective culture to children within the campus, resident halls, bathrooms, classrooms, and/or other external locations operated, visited, and/or owned by Defendant;

g. Failure to establish, implement, and maintain proper and effective policies and procedures to monitor and prevent sexual, physical, and/or emotional abuse of and/or other abusive behavior toward children;

h. Negligently maintaining custody, supervision and protection of children placed in their care by virtue of their legal authority;

i. Failure to properly train Cresson staff, teachers, counselors, employees, agents, servants, representatives, and/or ostensible agents to identify signs of child molestation or inappropriate sexually related behavior to children and/or physical and/or emotional abuse of children by fellow employees, associates, and/or individuals within its control, oversight, supervision, and/or ostensible control;

j. Negligent retention of and/or failure to terminate PERPETRATORS and/or staff members, and/or other sexually inappropriate and/or abusive individuals from or associated Cresson, promoting a culture and environment of complicity, denial and deception regarding child abuse at Cresson;

k. Recklessly, negligently and/or carelessly failing to observe, manage, direct, oversee, and supervise the relationship between Plaintiffs and PERPETRATORS and/or other staff members;

l. Recklessly, negligently and/or carelessly failing to have proper and effective policies and procedures to require adequate observation, management, oversight, and supervision of the relationship between Cresson staff, including, but not limited to, PERPETRATORS, and/or staff members and the Plaintiffs;

m. Recklessly, negligently and/or carelessly failing to recognize the conduct of PERPETRATORS, and/or staff members and behavior prior to the events in question and/or as described herein as creating a risk of sexual, physical, and/or emotional abuse toward children, including, but not limited to, Plaintiffs;

n. Recklessly, negligently and/or carelessly failing to have proper policies and procedures to require adequate observation, management, oversight, and supervision of Plaintiffs and PERPETRATORS and/or staff members;

o. Failing to investigate complaints that PERPETRATORS and/or staff members were behaving inappropriately and/or touching children inappropriately, including, but not limited to, Plaintiffs;

p. Failing to detect a rampant and open culture of sexual, physical, and/or emotional abuse of children in Cresson's care;

q. Failing to stop a rampant and open culture of sexual, physical, and/or emotional abuse of children in Cresson's care;

r. Violating the Juvenile Justice Act, 42 Pa.C.S. §§ 6327(a), pertaining to juveniles being housed in a location "where the child is apt to be abused by other children" 42 Pa.C.S. §§ 6327(a);

s. Threatening Cresson residents with physical and/or sexual harm in an attempt to prevent them from reporting abuse, and/or otherwise threatening punishment (e.g., home passes) if the abuse was reported;

t. Violating state standards for juvenile correctional facilities.

71. Defendant was negligent under the facts as detailed within this Complaint in that the Defendant failed to use that degree of care, precaution and vigilance which a reasonably prudent person or entity would use under the same or similar circumstances, including, but not limited to, the negligent affirmative acts detailed in this Complaint which a reasonably prudent person or entity would not have done, and also the negligent omission or failure to act and/or take precautions as detailed in this Complaint which a reasonably prudent person or entity would have done or taken under these circumstances.

72. The actions of Abuser Leo, Maria, and/or staff members as described herein are evidence of negligence *per se* attributable to the Defendant.

73. Defendant is vicariously liable for both the negligent and intentional acts of PERPETRATORS and/or staff members, their employee(s), where it is widely known that there is vulnerability of children and a public policy to protect said children from victimization, and imposes responsibility upon those individuals and institutions in the best position to know of and stop the abuse to said children, such as the Defendant herein.

**WHEREFORE,** Plaintiff demands judgment against Defendant in an amount in excess of Fifty Thousand Dollars ($50,000.00), exclusive of prejudgment interest, costs and damages for

pre-judgment delay, punitive damages, and such other legal and equitable relief as the Court deems appropriate.

**COUNT 2 – BREACH OF FIDUCIARY DUTY**

**Plaintiffs**
**v.**
**Defendant JRI operating Cresson**

74. The previous paragraphs set forth above are incorporated herein by reference.

75. By virtue of their status as owners and/or supervisors of Cresson, a juvenile residential care facility, Defendant bore a fiduciary relationship to Plaintiff and other children and persons at Cresson.

76. Defendant had fiduciary duties to avoid harming children and to protect them from harm at the hands of staff, teachers, employees, agents, servants, representatives, and/or ostensible agents hired, certified, assigned, retained, supervised, managed, overseen, directed, administrated, and/or otherwise controlled by and for Defendant.

77. Defendant breached their fiduciary duties by acting or failing to act in accordance with their fiduciary duties and/or as alleged in this Complaint.

78. Plaintiff suffered the above-averred harms and damages as a result of Defendant's breach of their fiduciary duty.

WHEREFORE, Plaintiff demands judgment against Defendant in an amount in excess of Fifty Thousand Dollars ($50,000.00), exclusive of prejudgment interest, costs and damages for pre-judgment delay, punitive damages, and such other legal and equitable relief as the Court deems appropriate.

Dated: November 26, 2025

GOLDBERG, PERSKY & WHITE, P.C.
*Attorney for Plaintiff*

/s/ Jason E. Luckasevic, Esq.

By: Jason E. Luckasevic, Esq.
Attorney I.D. No.: 85557

GOLDBREG, PERSKY & WHITE, P.C.
11 Stanwix St., Suite 1800
Pittsburgh, PA 15222
Phone: (412) 471-3980

jluckasevic@gpwlaw.com

*/s/ Max Petrunya, Esq.*
By: Max Petrunya, Esquire
Attorney I.D. No.: 309122

MAX PETRUNYA, P.C.
5 Bayard Rd., Unit 917
Pittsburgh, PA 15213
Phone: (412) 720-3497

maxpetrunyapc@gmail.com

**IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

BRANDON BOETTIGER,

Plaintiffs,

vs.

JUSTICE RESOURCE INSTITUTE an MA corporation formerly responsible for the operation of CRESSON SECURE TREATMENT UNIT,

Defendant.

No.: 24-cv-1470-MRH

**CERTIFICATE OF SERVICE**

I certify that on 26th day of November, 2025, I caused the foregoing PLAINTIFF'S SECOND AMENDED COMPLAINT to be served on counsel of record through filing with the United States District Court's ECF/CM electronic filing system.

**11-26-25**
Dated

**/s/ Max Petrunya, Esq.**
Max Petrunya, Attorney for Plaintiff